# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JUSTIN MARTIN**,

          Plaintiff,

vs.

**COUNTY OF JACKSON**, a municipal corporation, **DEPUTY GERALD PRATT**, in his individual and official capacities, and **DEPUTY DOUGLAS PANNONE**, in his individual and official capacities,

          Defendants.
_____/

No. 2:13-cv-10713
Hon. Gerald E. Rosen

## OPINION AND ORDER GRANTING DEFENDANT JACKSON COUNTY'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

In this prisoner civil rights litigation, Plaintiff Justin Martin claims that Deputies Gerald Pratt and Douglas Pannone (Deputies) assaulted him and then withheld medical care while incarcerated at the Jackson County Jail in violation of the Eighth Amendment and Michigan common law. He also alleges that Jackson County is liable for the Deputies' misconduct pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Jackson County has now moved for summary judgment. Having reviewed and considered Jackson

1

County's Motion and supporting brief, Plaintiff's Response,[1] and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Jackson County's motion "on the briefs." See L.R. 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

A.   **The May 8, 2011 Incident**[2]

On May 8, 2011, Plaintiff Justin Martin was serving a sentence at the Jackson County Jail for a drug-related conviction. (Plf's Dep., at 17-18). At approximately 8:00 p.m., Plaintiff decided to leave his assigned barrack to go play basketball. (*Id.* at 53, 59, 62). Deputy Pratt, the acting Sergeant on duty, stopped Plaintiff, shoved him, and told him to "get the fuck back." (*Id.* at 54, 61-62).

---

[1] In Response to Jackson County's Motion, Plaintiff submitted "affidavits" from two fellow inmates concerning their observations of the May 8, 2011 incident. (Exs. B & C to Plf's Resp., Dkt. ## 17-3, 17-4). The Court will not consider these documents in opposition to Jackson County's Motion, however, because they are neither notarized nor executed "under the penalty of perjury." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002); *CareToLive v. Food and Drug Admin.*, 631 F.3d 336, 344-45 (6th Cir. 2011); 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4). Notwithstanding, even if these "affidavits" were sufficient, they do not raise any material facts with respect to Plaintiff's claim against Jackson County.

[2] The Court views the record -- as it must -- in a light most favorable to Plaintiff, but notes that the Deputies absolutely dispute Plaintiff's version of events. Jackson County acknowledges that this factual dispute precludes summary judgment on Plaintiff's claims against the Deputies (Def's Mtn., Dkt. # 15, at 6), and the Deputies have not so moved.

Plaintiff complied and returned to his assigned barrack. (*Id.*). He then complained to another deputy about Pratt's treatment. (*Id.*). That deputy, Deputy Benson, instructed Plaintiff to sit down at a table with other inmates, but Plaintiff refused because he did not know them. (*Id.*).

Deputy Pratt, having observed this exchange, became upset and asked Plaintiff, "Didn't you hear what [Deputy Benson] said?" (*Id.*). Pratt then ordered Plaintiff to stand against the wall, and searched Plaintiff with Deputy Pannone and Deputy Benson's assistance. (*Id.* at 55). Next, Pratt sprayed Plaintiff in the face with pepper spray and Deputy Pannone threw Plaintiff into a nearby isolation cell. (*Id.*). Pratt and Pannone started kneeing and kicking Plaintiff, telling him to "stop resisting arrest." (*Id.*). Pratt then handcuffed Plaintiff, pulled him up and choked him. (*Id.*). Pratt released Plaintiff and hit him in the back of his head with a baton. (*Id.* at 56). Both Pratt and Pannone picked Plaintiff up a second time, opened up Plaintiff's prison jump suit, and upon Pratt's instruction, Pannone sprayed Plaintiff with pepper spray again. (*Id.*). The Deputies then left Plaintiff in the cell. (*Id.*). As a result of the incident, Plaintiff sustained various injuries to his nose, forehead, shoulders, lower back, and arms. (*Id.* at 23, 24, 27, 30, 32-33).

Plaintiff remained in his cell for the next two hours without any contact from anyone else. (*Id.* at 84). Then, around 10:00 p.m., an unknown deputy removed Plaintiff's handcuffs. (*Id.*) Plaintiff complained about the effects of the pepper

spray and requested a Sudecon wipe -- a decontamination wipe designed to neutralize the effects of pepper spray. (*Id.* at 85). The unknown officer instructed Plaintiff to use water, which he did via the toilet in the cell because the sink's water was not working. (*Id.* at 86-87). The unknown officer also gave Plaintiff a Sudecon wipe. (*Id.* at 90-91).

At some point, Plaintiff requested that he speak to someone in charge because he wanted to go to the doctor. (*Id.* at 87). Pratt told Plaintiff that he was not going to go anywhere because he "was charged with resisting arrest." (*Id.* at 87-88). Plaintiff was also told that he could only get one Sudecon wipe every six to eight hours. (*Id.* at 58). Plaintiff eventually saw the jail's nurse, who wrapped his arm and provided him with additional Sudecon wipes. (*Id.* at 89). After his release from the jail on the following morning, Plaintiff sought medical treatment at Chelsea Community Hospital. (*Id.* at 42-43). He also filed a complaint with the Jackson County Sheriff's Department, which was ultimately rejected for some unknown reason. (*Id.* at 94-97).[3]

## B.    Jackson County's Policies

Jackson County has a myriad of policies and procedures in place governing the use of force and medical care, as well as the training, supervision and discipline

---

[3] Plaintiff's Complaint also alleges that Pratt's incident and use of force reports "both . . . contained false information and material omissions." (Plf's Comp., Dkt. # 1, at ¶ 35). He put forth no facts or argument to sustain this allegation.

of its deputies. (Ex. 1 to Def's Mtn., Dkt. # 15-2, and accompanying exhibits). Deputies Pratt and Pannone are state certified correction officers through the Michigan Corrections Academy, and received training concerning the three applicable policies here: (1) General Order 31: Use of Non-Lethal Force; (2) General Order 32: Less Lethal Weapons; and (3) Jail Order 32a: Medical Treatment. These three Orders generally govern when deputies may use non-lethal force, what procedures deputies must follow when using pepper spray, and when prisoners must receive medical treatment. It is not necessary to go into detail as to the Orders' specific provisions, because as discussed below, even if Plaintiff can raise facts showing that the Deputies did not follow these Orders, he has put forth no facts indicating that the Deputies (or others) previously engaged in similar misconduct so as to hold Jackson County liable under *Monell*.

### III. DISCUSSION

**A.     Rule 56 Standard**

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

5

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where a moving party -- here, Jackson County -- seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.     Jackson County Is Entitled to Summary Judgment on Count II**

Plaintiff's Count II arises under 42 U.S.C. § 1983, seeking to hold Jackson County liable for the federal constitutional violations that Plaintiff allegedly suffered on May 8, 2011 during his incarceration at the Jackson County Jail. "It is

firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby Cnty.,* 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell*, 436 U.S. at 694). "For liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort." *Id.* Where, as here, a plaintiff asserts municipal liability for a single act of misconduct, he must set forth "proof that [the single incident] was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker." *Oklahoma v. Tuttle,* 471 U.S. 808, 824 (1985). If the policy itself is not unconstitutional, "considerably more proof than the single incident would be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.*

"There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). In this case, Plaintiff asserts that the Deputies were inadequately trained

7

and supervised in the use of force and provision of medical care. (Plf's Compl., Dkt. # 1, at ¶ 46). He also claims that Jackson County tolerated violations of civil rights by failing to properly investigate and discipline deputies involved in alleged misconduct. (*Id.* at ¶ 47).

Under either theory of liability, a plaintiff can succeed "[o]nly where a municipality's failure . . . evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). This standard, in turn, can be met by showing that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390; *Thomas*, 398 F.3d at 429 (plaintiff must show that "the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction") (citation and alteration omitted). Plaintiff must also establish that "through its deliberate conduct, the municipality was the 'moving force' behind" the violation of his constitutional rights -- that is, he "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Gregory*, 220 F.3d at 442 (quoting *Bd. of Cnty.*

*Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 405 (1997)); *see also City of Canton*, 489 U.S. at 388; *Thomas*, 398 F.3d at 429. Finally, and fatal to Plaintiff's claim, both theories "require[] a showing of 'prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of [unconstitutional misconduct] and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation and alteration omitted).

Plaintiff has failed to sustain his burden on his *Monell* claim against Jackson County. The record is devoid of *any* prior instances of similar misconduct so as to put Jackson County on notice of deficient policies or procedures. *Id.*; *Thomas*, 398 F.3d at 433-34; *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464-65 (6th Cir. 2008) (citing evidence of prior instances of unconstitutional conduct as the ordinary means by which a plaintiff may satisfy the deliberate indifference standard for municipal liability).[4] In short, taking the record facts in Plaintiff's light, Plaintiff invites this Court to infer from a single episode that the Deputies must have been

---

[4] Nor may the Court permit Plaintiff to just stand on his allegations in the Complaint. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) ("To defeat a motion for summary judgment a plaintiff 'can no longer rely on the conclusory allegations of its complaint.'") (citation omitted). Rather, because he "has had a full opportunity to conduct discovery," he must "present affirmative evidence" supporting his allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Expert Masonry, Inc. v. Boone Cnty.*, 440 F.3d 336, 341 (6th Cir. 2006) (the nonmoving party "must present significant probative evidence in support of its complaint to defeat a motion for summary judgment").

improperly trained and that Jackson County was deliberately indifferent to the need for better training or the need to properly investigate and discipline deputies involved in alleged misconduct. The case law cited above, however, precludes such inferences. *See also Miller v. Calhoun Cnty.,* 408 F.3d 803, 815-16 (6th Cir. 2005) (observing that the "deliberate indifference" standard for municipal liability "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures," and finding that the plaintiff's claim of inadequate training failed for lack of evidence of a "history of similar incidents" that would have put the defendant "on notice" of a need "to take meliorative action").

Plaintiff's only rebuttal on this issue is that Deputy Pratt testified that upon use of force, prisoners are isolated for sixteen hours and that upon use of pepper spray, *he* provides Sudecon wipes "[a]s soon as [the prisoner] calm[s] down." (Pratt's Dep., at 34, 36). From this, Plaintiff claims that "Jackson County has a de facto policy of placing inmates in isolation for sixteen hours following any use of force without access to adequate medical care until the inmate has calmed down." (Plf's Resp., Dkt. # 17, at 9). Taking the facts in Plaintiff's best light, this testimony suggests that Pratt did not follow Jackson County's policy governing the use of force, use of pepper spray, and medical treatment, but does not suggest a defacto policy of no medical treatment for sixteen hours. In addition to distorting

the factual record, the fatal flaw in this rebuttal is that Plaintiff cannot just rely upon a single infraction by a non-policymaker to impose § 1983 liability. As referenced above, he must show that the Deputies -- or for that matter, others -- engaged in prior instances of similar misconduct sufficient to put Jackson County on notice that its training and procedures are not up to Constitutional snuff. Plaintiff did not so show. Accordingly, the Court finds that the Jackson County is entitled to summary judgment in its favor on Plaintiff's Count II.[5]

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Jackson County's Motion for Summary Judgment [Dkt. # 15] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's claims against Jackson County and the Deputies in their official capacities are dismissed with prejudice.

**IT IS SO ORDERED.**


Dated: April 10, 2014         s/Gerald E. Rosen
                              GERALD E. ROSEN
                              CHIEF, U.S. DISTRICT COURT

---

[5] Because Jackson County is entitled to Summary Judgment, the Court also dismisses the official capacity claims against the individual Deputies. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 10, 2014, by electronic and/or ordinary mail.

                                              s/Julie Owens
                                              Case Manager, 313-234-5135